1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Hon. Barbara J. Rothstein

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| | |
|---|---|
| ACCESS TO ADVANCED HEALTH INSTITUTE, | Case No. 2:24-CV-01253-BJR |
| Plaintiff, | **DEFENDANTS' OPPOSITION TO PLAINTIFF'S EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER** |
| vs. | |
| PATRICK SOON-SHIONG, M.D. and CHAN SOON-SHIONG FAMILY FOUNDATION, | **ORAL ARGUMENT REQUESTED** |
| Defendants. | |

OPPOSITION TO PLAINTIFF'S TRO MOTION -
CASE NO. 2:24-CV-01253-BJR

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, WA 98101
(206) 905-7000

## <u>TABLE OF CONTENTS</u>

Page

I. INTRODUCTION ...................................................................................................1

II. BACKGROUND .....................................................................................................3

    A. Dr. Casper's History and Misuse of Funds, Leading to IDRI's Receivership............................................................................................3

    B. AAHI's Exit from Receivership and Receipt of the Grant from the Chan Soon-Shiong Family Foundation to Pursue Projects in Africa.................3

    C. AAHI Board Composition .....................................................................5

    D. AAHI's Board Vote to Fund Projects in Africa.....................................5

    E. Management's Attempt to Install Unelected Board Members and Refusal to Accept Board Resolutions .................................................................6

    F. AAHI Board Resolution to Investigate Management's Conduct ............7

    G. Management's Covert and Unauthorized Retention of Susman Godfrey ..............7

III. LEGAL STANDARD ..............................................................................................8

IV. MANAGEMENT'S REQUEST FOR A TRO SHOULD BE DENIED ...........................8

    A. AAHI Is Not Likely to Prevail on the Merits .........................................8

        1. Management and Its Counsel Do Not Have Authority to Pursue Their Agenda in the Name of AAHI .......................................8

        2. Dr. Soon-Shiong Did Not Breach Any Fiduciary Duties ...........9

        3. The Bylaws, Amended MOU, Grant Agreement, and Governance Committee Charter All Prohibit and Defeat the Extraordinary Relief Being Sought.................................................................10

        4. The Corporate Governance Issues Here Are Not Proper Subjects of TRO Relief ..............................................................................11

    B. There Is No True Emergency, as Neither AAHI Nor Management Will Suffer Irreparable Harm Absent a TRO....................................................12

    C. The Balance of Hardships Weighs Against a TRO ................................14

    D. The Balance of Hardships Also Weighs Against Management Because the Emergency Relief Being Sought Is Impermissibly Overbroad and Imprecise .............................................................................................14

    E. Public Interest Factors Do Not Favor, and Actually Disfavor, a TRO ................15

    F. If Any Emergency Relief Is Granted, the Court Should Require Management to Post a Substantial Bond ................................................15

V. CONCLUSION ....................................................................................................15

OPPOSITION TO PLAINTIFF'S TRO MOTION -
CASE NO. 2:24-CV-01253-BJR

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, WA 98101
(206) 905-7000

1

## I.  **INTRODUCTION**

2          While proclaiming that they wish to preserve the "status quo," three individuals at Plaintiff

3   Access to Advanced Health Institute ("AAHI") – CEO and Board member Dr. Corey Casper,

4   General Counsel Candice Decaire, and one outside director (Dr. Edward Mocarski) (collectively,

5   "Management") – are clumsily attempting a corporate coup.  Part of their agenda is to halt a Board

6   investigation of AAHI's misuse of grant funds.  The individuals, via counsel they retained to

7   purport to act for AAHI without Board approval, ask this Court for seven extraordinary remedies

8   based on false claims of "emergency" and in clear violation of AAHI's governance documents and

9   contractual commitments.  They ask the Court to:

10         (1) require Board Chairman and major donor Dr. Soon-Shiong to recuse himself from

11   major Board decisions on broad subject matters;

12         (2) endorse their improper effort to install two new directors affiliated with Management

13   onto the Board, contrary to the Bylaws and without a valid Board vote;

14         (3) nullify any Board actions taken after this unauthorized lawsuit was commenced;

15         (4) nullify certain Board actions taken *before* this lawsuit was commenced, including

16   (tellingly) the independent investigation the Board commenced into Management's misconduct;

17         (5) order that the Board may act as to certain issues only with at least seven directors;

18         (6) prohibit AAHI from sending monies to hospital organizations in South Africa, as it was

19   duly authorized by the Board to, and as it committed to its donor to do; and

20         (7) appoint a "corporate monitor" without any legitimate basis for that relief – to oversee,

21   among other things, expansion of the Board, in an effort to circumvent the Bylaw and Governance

22   Committee requirements that such expansion is permitted only by a majority Board vote.

23         None of this relief is permissible, particularly on an "emergency" TRO application.  There

24   is no emergency, let alone one that would require the Court to interfere with AAHI governance,

25   and advance Management's agenda, in the impermissible ways set forth above.  There is no reason

26   or precedent for the Court to grant the extraordinary relief these three individuals seek, or to

27   facilitate the attempted Management coup and attempt to avoid an independent investigation of

28   Management's own misdeeds and misuse of grant funds.

OPPOSITION TO PLAINTIFF'S TRO MOTION - 1
CASE NO.  2:24-CV-01253-BJR

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, WA 98101
(206) 905-7000

What is really going on is this:  Dr. Soon-Shiong, through the Chan Soon-Shiong Family Foundation ("Foundation"), made a $26 million grant to AAHI.  That grant enabled AAHI to recover from insolvency and exit receivership.  The Foundation made the grant with the understanding that AAHI and its CEO had a true commitment to help underserved populations suffering from diseases in Africa.  The $26 million was primarily intended (and AAHI promised to use it) to fund certain medical initiatives in Africa, a goal that Dr. Casper professed to share with Dr. Soon-Shiong.  When the time came for the Board to approve funding those initiatives, a majority of the Board approved the funding, but Dr. Casper (who, per his employment agreement, is not supposed have a vote) and Dr. Mocarski objected.  When the Board committed, as promised, to spend $3 million per year over three years to support educating and training doctors and nurses in South Africa, Dr. Casper was displeased; he apparently preferred retaining funds to safeguard his lucrative compensation, rather than using the grant for its intended purpose.

Dr. Casper and Ms. Decaire then tried to orchestrate support for Dr. Casper's rejected views.  They sought to expand the number of directors from seven to eleven and install new "independent" directors – at least one clearly not "independent" at all, but affiliated with Dr. Mocarski – to support Management's position.  They put the Board expansion effort up for a vote without Dr. Soon-Shiong present, representing to the then-present directors that the vote was to determine only whether the Board would interview potential candidates.  They now claim the vote actually allowed a Governance Committee to appoint and install candidates no one on the Board had even met (other than Dr. Mocarski), in violation of the Bylaws and Governance Committee charter.  Among other things, the Board never conducted the voting the Bylaws require to expand the number of directors by two or to install the two "new" directors.  There are no Board meeting minutes or other contemporaneous writings showing that any new directors were duly approved by the Board, and AAHI's papers cannot point to any.  In fact, last week, on August 13, 2024, the Board  passed a resolution clarifying that no new directors had actually been appointed.

The day after Management's effort to pack the Board was rejected by Board resolution, Management ran to this Court via counsel it had retained proclaiming an "emergency."  Counsel purportedly representing AAHI here was retained by Management covertly and without Board

OPPOSITION TO PLAINTIFF'S TRO MOTION - 2
CASE NO.  2:24-CV-01253-BJR

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, WA 98101
(206) 905-7000

authority – and in defiance of contemporaneous Board discussions directing that these issues be resolved amicably.  Management now is using this outside counsel, apparently being compensated on contingency basis impermissibly compromising future Foundation funds, to ask this Court to advance their agenda and to grant extraordinary and impermissibly meddlesome relief.

For all of these reasons – unauthorized retention of counsel, using future grant funds for compensation, disregard of Bylaws and Governance Committee charter, Board directives, and contractual commitments, and extreme overreaching with no true emergency – the TRO application should be denied.  The requested relief involves matters of corporate governance inappropriate for resolution on a TRO, particularly where there is no actual "emergency," apart from Management's desire not to be investigated and to undo Board votes they do not like.  For these, and other reasons discussed below, the Court should deny the TRO request in its entirety.

## II.    BACKGROUND

### A.    Dr. Casper's History and Misuse of Funds, Leading to IDRI's Receivership

Although AAHI's papers suggest that prior management was to blame for AAHI's past struggles and receivership, *see* Complaint ¶ 8, Dr. Casper, the mastermind of the current attempted coup, *was* prior management.  Dr. Casper was the Chief Medical Officer, Chief Scientific Officer, and CEO of AAHI's predecessor (IDRI) in the five years before its emergence from receivership, and successfully ousted IDRI's founder Steve Reed in 2019.  *See* Soon-Shiong Decl. Exs. 11, 12.

At the time Dr. Casper took over IDRI, the company had been working on vaccines for leprosy and TB, having secured, among others, a research grant of up to $45 million from the National Institutes of Health.  *Id*.  In a move that, according to the NY Times, "baffled many," Dr. Casper laid off one third of its employees the day before Thanksgiving, "shutter[ing]" its TB and leprosy programs.  *Id*.  At the same time, Dr. Casper staunchly defended his own salary increase, while terminating Dr. Reed who had invented ID93, the TB vaccine.  *Id*.  IDRI entered receivership under Dr. Casper's leadership by 2020.  Decaire Decl. ¶ 6.

### B.    AAHI's Exit from Receivership and Receipt of the Grant from the Chan Soon-Shiong Family Foundation to Pursue Projects in Africa

When Dr. Soon-Shiong and the Foundation first became involved with AAHI (then IDRI)

in 2021, AAHI was in receivership. Soon-Shiong Decl. ¶ 2. AAHI's CEO Dr. Casper and General Counsel Ms. Decaire approached Dr. Soon-Shiong and his family Foundation asking that they contribute funds to rescue AAHI. *Id.* Dr. Casper represented that AAHI's goal was to support the underserved in Africa. *Id.* ¶ 3. In a June 2, 2021 e-mail to Dr. Soon-Shiong, Dr. Casper wrote, "I am thrilled at the opportunity for all of us to work together to advance the manufacturing of next-generation vaccine technologies in South Africa." *Id.* Ex. 1.

Consistent with these discussions, the Foundation signed a Memorandum of Understanding with AAHI on May 14, 2021, which was amended on January 7, 2022 (the "Amended MOU"). *See* Dkt. 1 ("Compl."), Ex. 2 (MOU). The Amended MOU recites that, to enable AAHI to exit receivership, the Foundation will give AAHI $26 million over three years. *Id.* The funds were to enable AAHI to focus on "pandemic preparedness and rapid response, including a public benefit organization in South Africa." Compl. Ex. 2 at 1. The Amended MOU also reflects IDRI's name change to AAHI, a shorter version of the initially contemplated Africa's Access to Advanced Health Institute. Soon-Shiong Decl. ¶ 7. The Amended MOU is "legally binding" and "supersedes all previous written agreements, proposals and drafts, and oral agreements and discussions concerning its subject matter." Compl. Ex. 2 § 15.

The same day the Amended MOU was signed, the parties entered into a Grant Agreement ("Grant Agreement") for the provision of Foundation funds to AAHI.[1] Compl. Ex. 1. Consistent with the Amended MOU, the Grant Agreement says its "purpose" is, among other things, to allow AAHI to "retain[] and/or hir[e] and train[] senior scientists and scientific staff from both the United States and low- and middle-income countries in the areas of immunology, virology, oncology, adjuvant and vaccine product and process development[.]" *Id.* § 2.1. The Grant Agreement provides the Foundation the ability to withhold funds under certain circumstances, references the Amended MOU, and contains an integration clause. *Id.* §§ 3.1(c), 7, 8.9.

Just after these agreements were signed, Dr. Casper and Dr. Soon-Shiong travelled to meet

---

[1]   AAHI also signed agreements with ImmunityBio, Inc., a public company of which Dr. Soon-Shiong is Executive Chairman. Dr. Soon-Shiong has recused himself from any AAHI Board decisions regarding ImmunityBio. *See* Decaire Decl. ¶ 75.

OPPOSITION TO PLAINTIFF'S TRO MOTION - 4
CASE NO. 2:24-CV-01253-BJR

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, WA 98101
(206) 905-7000

with leadership of the South African Universities of Cape Town, Wits, and Stellenbosch. Soon-Shiong Decl. ¶ 8. At these meetings, Dr. Casper re-affirmed that, after AAHI's exit from receivership, it would help provide advanced vaccine and educational human capital for the African continent. *Id.* These commitments were important to the Foundation. *Id.* ¶ 9.

### C.    AAHI Board Composition

The Amended MOU states that AAHI's Board shall consist of seven directors: Dr. Soon-Shiong, Dr. Casper, and five independent directors mutually agreed upon by both Dr. Soon-Shiong and Dr. Casper. Compl. Ex. 2, § 4. Under the Bylaws, the number may be increased only through a board vote; directors serve one-year terms; and, at the annual Board meeting, the directors for the following year are to be elected by Board vote. *Id.* Ex. 3 § 3.1. The Board has consisted of seven directors for over two years. On July 29, 2024, one director (David Kerr) indicated a desire to resign from the Board, but his resignation has not yet been accepted. *See* Decaire Decl. Ex. 40.

### D.    AAHI's Board Vote to Fund Projects in Africa

Consistent with the Amended MOU and Grant Agreement, the Board took steps to fund initiatives in Africa. On December 8, 2023, for example, the Board adopted a resolution that, among other things, directed management to establish a formal collaboration with the South African Medical Research Council "to advance diagnostics, medical interventions and develop human capacity across the research, care, and manufacturing spectrum." Decaire Decl. Ex. 8.

At a February 27, 2024 board meeting, the Board considered an application from the Wits Donald Gordon Medical Centre to fund training of doctors in South Africa. *See id.* Exs. 11, 12, 15. The Board adopted a resolution agreeing to give $3 million per year for three years to support the organization. *See id.* Ex. 17. Five of seven Board members voted in favor. Decaire Decl. ¶ 35. Specifically, Dr. Soon-Shiong, Dr. Gray, Dr. Kerr, Dr. Concepcion, and Mr. Hsu voted for the resolution; Dr. Casper and Dr. Mocarski objected. *Id.* Ms. Decaire was present and asked the directors to consider whether they were conflicted; all determined that there was no conflict and that they could vote. *Id.*; Soon-Shiong Decl. ¶ 15.

To effectuate the Board's February 27 resolution regarding sending funds to South Africa, at a June 3, 2024 board meeting, the Board adopted a resolution forming a sub-committee to

OPPOSITION TO PLAINTIFF'S TRO MOTION - 5
CASE NO. 2:24-CV-01253-BJR

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, WA 98101
(206) 905-7000

manage the funds to be transferred.  *See* Decaire Decl. Ex. 22.  The sub-committee was to be comprised of five board members, including Dr. Casper, and one African delegate.  *See id.*  The African delegate was Mr. Robert Appelbaum with the South African law firm Weber Wentzel.  *See id.* Exs. 19, 20, 26.  Because the draft meeting minutes Ms. Decaire circulated did not accurately reflect the Board's resolution, they have not been finalized or approved.  *See id.* Ex. 22.

Management claims that after the June 3 resolution was adopted and Dr. Soon-Shiong left, the "board members who remained at the meeting unanimously approved extending invitations to join the board to four new candidates who had been recommended by the Governance Committee and discussed in past board meetings and correspondence."  Compl. ¶ 48; *see also* Decaire Decl. Ex. 36.  Critically, this vote of a Board subset did not expand the number of directors.  Compl. Ex. 3 § 3.1; Gray Decl. ¶ 5; Hsu Decl. ¶ 3; Concepcion Decl. ¶ 4; Kerr Decl. ¶ 5.  Rather, the vote was to extend invitations and consider candidates the Governance Committee proposed and to have Board members interview them before a future meeting to vote on their potential election; at the time, most Board members other than Dr. Mocarski had not even met them.  Gray Decl. ¶¶ 2, 4; Hsu Decl. ¶ 2; Concepcion Decl. ¶ 2; Kerr ¶ 3.  At no time was Dr. Soon-Shiong asked to approve the new candidates as the Amended MOU required.  Soon-Shiong Decl. ¶ 19.

As discussed below, Dr. Casper is now attempting to use what happened in June to effectuate the packing of the Board with members loyal to him and to Dr. Mocarski, and to undo the Board resolution in February regarding South Africa funding.

### E.   Management's Attempt to Install Unelected Board Members and Refusal to Accept Board Resolutions

Even though the Board had never voted to expand the number of directors, Dr. Casper, ostensibly on behalf of the Governance Committee, extended invitations to Dr. Julie Cherrington and Dr. Ann Kwong on June 7, 2024 to join the Board.  *See* Decaire Decl. Ex. 39.  The Board did not approve these invitations, one of which was to an individual, Dr. Cherrington, affiliated with Dr. Mocarski; the two have co-authored four papers together, and Dr. Cherrington is listed as a Dr. Mocarski "trainee" on his CV.  Cobb Decl. Exs. 1-5.  Both candidates accepted.

Dr. Casper immediately sought to convene a July Board meeting to discuss the budget –

and to undo the earlier resolution regarding sending funds to South Africa with a supposedly newly expanded Board.  *See* Compl. ¶ 60.  Dr. Soon-Shiong expressed surprise, writing, "I am unaware of any new board members joining ???"  Decaire Decl. Ex. 24.  Dr. Soon-Shiong sought "an urgent board meeting to understand the current state of affairs" and to have Mr. Appelbaum present regarding the transfer of funds to South Africa that had been approved months earlier.  *Id.*

**F.     AAHI Board Resolution to Investigate Management's Conduct**

At an August 13, 2024 Board meeting called by Dr. Soon-Shiong, a quorum was present.  Although, as Ms. Decaire noted, Dr. Soon-Shiong had noticed the meeting on August 8, 2024, less than the 10 days' notice required by the Bylaws, Soon-Shiong Decl. ¶ 21, a majority of the directors waived notice as the Bylaws permit.  *See id.*; Compl. Ex. 3 § 3.13.  At the meeting, the Board determined "no new board members have been duly appointed in accordance with the Bylaws."  Decaire Decl. Ex. 40.  The Board also resolved to appoint independent legal counsel to investigate certain actions by Management (including Dr. Casper and Ms. Decaire), including Management's refusal to follow clear Board directives.  *Id.*

**G.     Management's Covert and Unauthorized Retention of Susman Godfrey**

We now know that before the August 13, 2024 meeting, Ms. Decaire and Dr. Casper had covertly retained the Susman Godfrey law firm to carry out Management's agenda through litigation and to commit AAHI funds to pay those lawyers.  The day after the Board resolved to appoint independent counsel to investigate Management, August 14, 2024, Susman Godfrey LLP filed the instant action, purportedly on behalf of AAHI, alleging various supposed misdeeds by Dr. Soon-Shiong and seeking, among other things, his removal as a board member.  *See* Compl., Prayer for Relief.  This suit was never authorized by the Board, and actually was contrary to Board instructions.  *See* Soon-Shiong Decl. ¶ 23; Gray Decl. ¶¶ 8, 9; Hsu Decl. ¶¶ 5, 6; Concepcion Decl. ¶¶ 6, 7.  The Board has also never been asked to vote on a resolution to remove Dr. Soon-Shiong as a director or even considered such action.  *See* Soon-Shiong Decl. ¶ 23.

Recent communications reveal that Management retained Susman Godfrey largely on contingency – a costly proposition for AAHI that the Board never approved.  *See id.* Ex. 10.  And Ms. Decaire refused even to provide Susman Godfrey's contract to AAHI's Finance Committee

OPPOSITION TO PLAINTIFF'S TRO MOTION - 7
CASE NO.  2:24-CV-01253-BJR

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, WA 98101
(206) 905-7000

1  Chair, Mr. Edward Hsu, claiming "privilege."  Hsu Decl. ¶ 7 & Ex. 1.

2  ## III.  LEGAL STANDARD

3       A temporary restraining order is "an extraordinary and drastic remedy."  *Lopez v. Brewer*,

4  680 F.3d 1068, 1072 (9th Cir. 2012); *see also Winter v. Natural Res. Def. Council, Inc.*, 555 U.S.

5  7, 22 (2008).  Apart from the need for a true emergency, the standard for issuing a temporary

6  restraining order is "substantially identical" to the standard for a preliminary injunction.  *See*

7  *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001).  The

8  plaintiff must establish (1) "[it] is likely to succeed on the merits"; (2) "[it] is likely to suffer

9  irreparable harm in the absence of preliminary relief"; (3) "the balance of equities tips in [its]

10  favor"; and (4) "an injunction is in the public interest."  *Winter*, 555 U.S. at 20.  Where there are

11  "serious questions going to the merits," a preliminary injunction may issue only "if the 'balance

12  of hardships tips sharply in the plaintiff's favor,' and the other two *Winter* factors are satisfied."

13  *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013) (quoting *Alliance for*

14  *the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011)).

15  ## IV.  MANAGEMENT'S REQUEST FOR A TRO SHOULD BE DENIED

16  ### A.    AAHI Is Not Likely to Prevail on the Merits

17  #### 1.    Management and Its Counsel Do Not Have Authority to Pursue Their
       Agenda in the Name of AAHI

18
19       A threshold reason to deny a TRO – and indeed any relief at all in this action –  is that the

20  lawyers who filed it had and have no authority to advance Management's agenda in AAHI's

21  name.  Washington Revised Code ("WRC") Section 24.03A.490 provides that officers and

22  individual directors of a non-profit have only authority given to them by a Board.  AAHI's Bylaws

23  similarly provide that AAHI officers have only powers granted by the Board.  Compl. Ex. 3 ¶ 4.5.

24       As Management appears to concede, the three individuals who initiated this action did not

25  even attempt to obtain a Board approval to bring this lawsuit in AAHI's name.  *See* Compl. ¶ 21.

26  And Management has refused to provide independent Board members with Susman's retention

27  agreement (asserting "privilege"), confirming that Susman does not represent AAHI at all.  Hsu

28  Decl. ¶ 7 & Ex. 1.  When asked to explain on what authority it purported to bring claims, the

Susman Godfrey firm pointed to two documents, including Ms. Decaire's employment agreement, that authorize actions only in the normal course of AAHI business.  Bringing a lawsuit to advance one faction's agenda, and to assist a minority in taking over the Board, while asserting "privilege" as against AAHI's independent Board members, all at great expense to be paid by AAHI's grant money, is anything but ordinary.

Citing WRC Section 24.03A.966, the Complaint asserts that Management-retained counsel can pursue claims in AAHI's name because the Nonprofit Corporation Act allows individual corporate directors, or their delegates, to pursue a petition regarding the validity of contested corporate actions.  But that in no way allows a minority group (three individuals, two of whom are directors) to claim authority to act for the entity.   What that statute actually says is as follows:

> Except as provided in subsection (3) of this section, upon petition of a person whose status as, or whose rights or duties as, a member, delegate, director, or officer of a corporation are or may be affected by any corporate action, or, in the case of a charitable corporation, the attorney general, the court may hear and determine the validity of the corporate action.

Management's covertly appointed counsel does not have authority to pursue claims for AAHI.  There was never a Board vote or resolution consenting to the Susman firm's retention, or permitting Susman to bring a lawsuit on AAHI's behalf.  Section 24.03A.966 permits actions only by an individual "person whose status as, or whose rights or duties as, a member, delegate, director, or officer of a corporation are or may be affected by any corporate action."  It does not authorize Management to bring an action on behalf of the company.  Management cannot point to any Board vote or other proper authorization allowing Susman to advance this minority group's agenda.

## 2.    Dr. Soon-Shiong Did Not Breach Any Fiduciary Duties

Management is also not likely to prevail on its theory that Dr. Soon-Shiong breached duties to AAHI.[2]  Under the Washington Nonprofit Corporation Act, and consistent with court holdings in other jurisdictions, a charitable corporation is not barred from engaging in transactions in which its directors, such as Dr Soon-Shiong, have an interest, as long as such transactions are intrinsically

---

[2]   Management devotes a significant portion of their brief urging this Court to rule on an issue of first impression:  Whether directors of non-profit charitable organizations owe fiduciary duties under Washington law.  TRO at 14-16.  Because Dr. Soon-Shiong did not breach any duties, and there is no emergency or authority to bring these claims, the Court need not reach this issue.

OPPOSITION TO PLAINTIFF'S TRO MOTION - 9
CASE NO.  2:24-CV-01253-BJR

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, WA 98101
(206) 905-7000

fair or are approved by independent directors.  *See* WRC § 24.03A.615; *Oberly v. Kirby*, 592 A.2d 445, 472-73 (Del. 1991).  These standards will be satisfied here.

**First**, Dr. Soon-Shiong's participation in decision-making with respect to use of AAHI funds has been intrinsically fair.  AAHI agreed to appoint Dr. Soon-Shiong as Board Chairman, knowing his affiliation with AAHI's major donor, the Chan Soon-Shiong Foundation.  What Management now proposes is inappropriate and overbroad—that Chairman Dr. Soon-Shiong recuse himself from all decisions on how AAHI uses funds to comply with the Foundation's obligations under the Grant Agreement.  Dr. Soon-Shiong already recuses himself from issues regarding disputes with the Foundation or ImmunityBio.  Soon-Shiong Decl. ¶ 15.  There is no reason to exclude him from business discussions regarding AAHI's use of funds generally.

**Second**, the Board actions Management complains of, specifically the resolution to fund initiatives in South Africa, would have passed with a majority of voting directors, with or without Dr. Soon-Shiong.  The resolution passed by a vote of five to two (assuming Dr. Casper's objection counted).  Four to two would still be a majority under the Bylaws.  Compl. Ex. 3 § 3.7.

By Management's own admission, AAHI sought to work with Dr. Soon-Shiong to identify projects in South Africa.  Dr. Soon-Shiong made no unilateral decisions; rather, the Board considered the application from the Wits Donald Gordon Medical Centre to fund training of doctors in South Africa and formally adopted the resolution, consistent with the Bylaws.

Management also incorrectly asserts that Dr. Soon-Shiong's refusal to recognize the two improper new directors breached fiduciary duties.  TRO at 17.  In standing on Bylaw requirements to protect the company from improperly installed board members, Dr. Soon-Shiong is obviously acting in good faith and in AAHI's interests.

3. **The Bylaws, Amended MOU, Grant Agreement, and Governance Committee Charter All Prohibit and Defeat the Extraordinary Relief Being Sought**

Management is also unlikely to succeed on its claims because the relief sought – such as a court order expanding the number of directors beyond seven, or declaring "new" directors validly appointed – is contrary to AAHI's Bylaws.  The number of Board seats cannot be increased beyond

OPPOSITION TO PLAINTIFF'S TRO MOTION - 10
CASE NO.  2:24-CV-01253-BJR

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, WA 98101
(206) 905-7000

seven without a Board vote or unanimous written consent, Compl. Ex. 3 §§ 3.1(a), 3.8, neither of which occurred here.  Otherwise, the Board can fill vacancies only as they arise.  *Id.* § 3.2.  The Amended MOU further provides that Dr. Soon-Shiong has a right to approve all new Board members; that never occurred.  Compl. Ex. 2 § 4.  Indeed, most current Board members have not even met the two "new" members Management is insisting are on the Board.  Gray Decl. ¶ 7; Hsu Decl. ¶ 4; Concepcion Decl. ¶ 5; Kerr Decl. ¶ 7.  And the Governance Committee Charter limits that committee's ability to fill Board vacancies.  Soon-Shiong Decl. ¶ 19 & Ex. 8.

Management also seeks to invalidate Board resolutions regarding use of funds for certain initiatives in Africa.  But the Amended MOU conditions Foundation obligations on AAHI's pursuit of projects in Africa, Compl. Ex. 2 § 10, as is consistent with the stated purpose of the Grant Agreement.  *Id.* Ex. 1 § 2.1.  Management argues the Grant Agreement's integration clause supersedes "prior" agreements, TRO at 6, but the Amended MOU is not a "prior" agreement and also contains an integration clause, Compl. Ex. 2 § 15, and the Grant Agreement references the Amended MOU.  *Id.* Ex. 1 § 3.1(c).  At a minimum, there are significant factual disputes that defeat Management's application.  *See Sherman v. Lunsford*, 44 Wash. App. 858, 862 n.3 (1986) ("Whether a contract is integrated is a question of fact [and a] boilerplate integration clause will be disregarded where it is in fact false as demonstrated by parol evidence."). !

### 4.    The Corporate Governance Issues Here Are Not Proper Subjects of TRO Relief

To resolve Management's claims, to the extent they are even justiciable, the Court will be required to make determinations about which directors do or should serve on AAHI's board; which directors should be removed or recused and from which matters; which past or current Board actions are valid; and related issues.  *See* Compl., Prayer for Relief.  Many of these complex corporate governance issues are fact-intensive and wholly inappropriate for resolution on a TRO. *See, e.g.*, *Stroud v. Grace*, 606 A.2d 75, 79 (Del. 1992) ("Delaware courts should exercise caution when invalidating corporate acts based upon hypothetical injuries and without giving due deference to established principles of Delaware law regarding corporate governance.").

Management cites no precedent in which a court in this district (or any other) has granted relief such as what they seek on a TRO.  And similar requests have been summarily denied.  For

OPPOSITION TO PLAINTIFF'S TRO MOTION - 11
CASE NO.  2:24-CV-01253-BJR

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, WA 98101
(206) 905-7000

example, in *CBS Corp. v. Nat'l Amusements, Inc.*, 2018 WL 2263385 (Del. Ch. May 17, 2018), the defendant that controlled approximately 80% of CBS's voting power pushed for a merger between CBS and Viacom. *Id.* at *1. The plaintiffs, a Board Special Committee formed to consider the merger, determined the merger was not in the company's best interests, and sought a TRO, asserting the controlling shareholder may "immediately replace members of the Board and use the new directors to force through the merger . . . and make other changes to the CBS organizational documents" to impede the Board. *Id.* at *1-2.

Like Management here, the Special Committee requested extraordinary relief: that the controlling shareholder be restrained from interfering with the composition of CBS's Board, modifying CBS's governance documents, or acting to interfere with decisions at a special Board meeting. *Id.* The Delaware Chancery Court denied plaintiffs' TRO request. *Id.* at *6. The court emphasized that "[n]o precedent has been identified . . . in which the court has ever entertained, much less sanctioned, the type of request for relief that plaintiffs ma[d]e here. In and of itself, this suggest[ed] that a truly extraordinary set of circumstances would be necessary to grant such a request." *Id.* This Court should similarly deny Management's TRO relief and attempted coup.

## B.     There Is No True Emergency, as Neither AAHI Nor Management Will Suffer Irreparable Harm Absent a TRO

Management's claims of irreparable harm are unpersuasive. First, and most tellingly, Management claims AAHI will suffer irreparable harm unless the independent investigation *into Management's own conduct* is restrained. Management has it backwards – the Board determined an investigation was warranted and authorized it at a proper meeting. It would harm AAHI and be a perverse result for Management to be able to impede investigation of Management's own conduct, by claiming irreparable harm should their misdeeds be exposed.

Management next claims they need emergency relief to prevent Dr. Soon-Shiong from being involved with company decisions "in any way pertaining to the Chan Soon-Shiong Foundation." This is impermissibly overbroad. For example, AAHI's use of the Foundation's grant funds, and the commitment to send a portion of those funds to South Africa, are principal components of AAHI's business – shutting Dr. Soon-Shiong out of such matters effectively would

OPPOSITION TO PLAINTIFF'S TRO MOTION - 12
CASE NO.  2:24-CV-01253-BJR

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, WA 98101
(206) 905-7000

mean that, even though he is Chairman, he would have no say as Chairman and director in major decisions of the company.  Dr. Soon-Shiong has consistently recused himself when true conflicts arise; that has been the status quo for the over two years he has been Board Chairman, and he has had a say in how AAHI uses funds received from the Foundation.  Management's delay in seeking to change the status quo, alone, is grounds to find no irreparable harm.  *See Miller v. Norris*, 2019 WL 5592856, at *3 (W.D. Wash. Oct. 30, 2019) (ten-month delay in seeking TRO undermined irreparable harm claim); *Lydo Enters. v. City of Las Vegas*, 745 F.2d 1211, 1213 (9th Cir. 1984) ("A delay in seeking a preliminary injunction is a factor to be considered in weighing the propriety of relief."); *Dahl v. Swift Distrib., Inc.*, 2010 WL 1458957, at *4 (C.D. Cal. Apr. 1, 2010) (eighteen-day delay in filing TRO application "implie[d] a lack of urgency and irreparable harm").

Management also asserts that AAHI will suffer irreparable harm absent the appointment of "new" directors Dr. Kwong and Dr. Cherrington on an emergency basis because the Bylaws require seven directors[3], and only six currently serve after Dr. Kerr indicated an intent (not yet accepted) to resign.  First, it is not correct that only six directors currently serve.  At the August 13, 2024 Board meeting, the Board "determined not to accept David Kerr's resignation until members have an opportunity to discuss with him whether he would reconsider and continue to serve on the Board." Decaire Decl. Ex. 40.  And should Dr. Kerr cease to be a director, the Bylaws specify the remedy:  "any vacancy in the Board, including a vacancy arising from an increase in the number of directors, may be filled by Board Vote."  Compl. Ex. 3 § 3.2.

Management similarly claims, incorrectly, that appointment of two "new" directors is necessary to ensure a sufficient number of "independent" directors (five) as the Bylaws and Amended MOU require.  Again, the remedy for any such shortfall is a Board meeting and vote, not a federal complaint and TRO advancing Management's inappropriate selections.

Finally, citing no authority in support, Management asserts AAHI will suffer irreparable harm absent the appointment of a corporate monitor to "facilitate the appointment of additional independent directors."  TRO at 3.  As noted, what Management really wants is court intervention

---

[3]  There is no basis for Management's insistence that there now be eight directors, including two who they are attempting to install without complying with the Bylaws.

OPPOSITION TO PLAINTIFF'S TRO MOTION - 13
CASE NO. 2:24-CV-01253-BJR

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, WA 98101
(206) 905-7000

to bypass the Bylaws and stack the Board with members aligned with them.  This is not appropriate emergency relief.  AAHI has Bylaws that must be followed.  That Management does not like these procedures does not create an emergency or irreparable harm.

### C.  The Balance of Hardships Weighs Against a TRO

The balance of hardships also weighs decisively against Management's requested relief. Management asserts that Dr. Soon-Shiong and the Foundation will not suffer *any* harm from its sweeping TRO request, whereas AAHI will be harmed without what they seek.  In reality, Dr. Soon-Shiong and the Foundation will of course suffer harm should the TRO issue.  Dr. Soon-Shiong would be prohibited from involvement in major Board decisions, including the use of funds his Foundation has donated.  The evidence is that a new Management-picked Board would spend the Foundation's grant money in contravention of the Grant Agreement, Amended MOU, and Board instructions (including by spending it on this litigation).

### D.  The Balance of Hardships Also Weighs Against Management Because the Emergency Relief Being Sought Is Impermissibly Overbroad and Imprecise

The relief Management seeks is overbroad and contrary to the "limited purpose" for which TROs and injunctions may be employed – maintaining the status quo.  *Zepeda v. United States I.N.S.*, 753 F.2d 719, 729 n.1 (9th Cir. 1983); *King v. Saddleback Junior College District*, 425 F.2d 426, 427 (9th Cir. 1970).

The seven remedies Management seeks would disrupt the status quo and are not narrowly tailored to any specific harm.  For example, Management essentially (and impermissibly) asks this Court to enjoin Dr. Soon-Shiong from participating in business decisions "pertaining to" the Foundation, whatever that means.  Such vague requests are contrary to well-settled Ninth Circuit law.  *Orantes-Hernandez v. Thornburgh*, 919 F.2d 549, 558 (9th Cir. 1990) ("[A]n injunction must be narrowly tailored to give only the relief to which plaintiffs are entitled."); *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1140 (9th Cir. 2009) ("The district court abuses its discretion in issuing an overbroad injunction.").

Further, as discussed below, Management's requested relief disturbs the status quo and runs afoul of AAHI's Bylaws (expanding the Board without a vote), and purports to require

OPPOSITION TO PLAINTIFF'S TRO MOTION - 14
CASE NO.  2:24-CV-01253-BJR

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, WA 98101
(206) 905-7000

invalidation of corporate acts taken in accordance with the Bylaws.

### E.   Public Interest Factors Do Not Favor, and Actually Disfavor, a TRO

Management claims the public interest favors a TRO by preserving the status quo while the Attorney General weighs whether to intervene.  But the requested TRO would not preserve the status quo; it would upend it.  The TRO would transform AAHI by expanding the Board beyond the seven directors permitted in the Bylaws, without a proper vote.  It would nullify Board resolutions about how AAHI should spend its money.  It would require overbroad recusal of a duly-elected Board member.  In short, Management's version of the "status quo" does not match reality and requires the denial of the TRO.  *See Townsend v. Bureau of Land Mgmt.*, 2012 WL 2792087, at *1 (W.D. Wash. July 9, 2012) (denying TRO and noting that "the basic function of such injunctive relief is to preserve the *status quo* pending a determination of the action on the merits"); *Bullock v. Carney*, 463 F. Supp. 3d 519, 524 (D. Del. 2020) (denying TRO where "counsel's proposed definition of status quo is not the existing state of affairs but instead the state of affairs he believes [plaintiff] is entitled to . . . and which he hopes to achieve with this lawsuit").

### F.   If Any Emergency Relief Is Granted, the Court Should Require Management to Post a Substantial Bond

Management asserts that no bond should be required.  But as discussed above, the requested relief could cause great harm to AAHI and upset the status quo:  it would nullify a Board resolution sending $9 million ($3 million per year for three years) to South Africa for critical healthcare needs, require overbroad recusal of the Board Chairman, and stack the Board with members improperly chosen to advance Management's goal of diverting Foundation funds to other purposes.  At a minimum, the Court should set a $3 million bond to address harm from Management spending this year's South Africa funds on other activities before a resolution on the merits is reached.  Further, because this action was filed in AAHI's name without proper authority, Defendants request that Management (not AAHI) be required to post the bond.

## V.   CONCLUSION

For the foregoing reasons, Management's effort to obtain a TRO should be denied.

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, WA 98101
(206) 905-7000

1     DATED: August 21, 2024

2

3                               By    */s/Alicia Cobb*
                              Alicia Cobb, WSBA #48685

4                               QUINN EMANUEL URQUHART &
                              SULLIVAN, LLP

5                               1109 First Avenue, Suite 210
                              Seattle, Washington 98101

6                               Tel.: (206) 905-7000
                              Fax: (206) 905-7100

7                               Email: aliciacobb@quinnemanuel.com

8

9                               John B. Quinn (*pro hac vice*)
                              Harry A. Olivar, Jr. (*pro hac vice*)

10                            Jeffrey N. Boozell (*pro hac vice*)
                           David M. Elihu (*pro hac vice*)

11                            QUINN EMANUEL URQUHART &
                           SULLIVAN, LLP

12                            865 South Figueroa Street, 10th Floor
                           Los Angeles, California 90017

13                            Tel.: (213) 443-3000
                           Fax: (213) 443-3100

14                            Email: johnquinn@quinnemanuel.com
                           Email: harryolivar@quinnemanuel.com

15                            Email: jeffboozell@quinnemanuel.com
                           Email: davidelihu@quinnemanuel.com

16

17                            *Attorneys for Dr. Patrick Soon-Shiong and Chan Soon-Shiong Family Foundation*

18

19

20

21

22

23

24

25

26

27

28

OPPOSITION TO PLAINTIFF'S TRO MOTION - 16
CASE NO. 2:24-CV-01253-BJR

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, WA 98101
(206) 905-7000

**CERTIFICATE OF SERVICE**

I hereby certify that on August 21, 2024, a true and correct copy of the foregoing was filed electronically by CM/ECF, which caused notice to be sent to all counsel of record.

*/s/ Alicia Cobb*

Alicia Cobb, WBSA #48685

OPPOSITION TO PLAINTIFF'S TRO MOTION - 17
CASE NO. 2:24-CV-01253-BJR

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, WA 98101
(206) 905-7000